# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 13-253V
Filed: February 18, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| WILLIAM RODRIGUEZ, *as the* | * | UNPUBLISHED |
| *Parent and Natural Guardian of* | * | |
| C.R., *a Minor*, | * | |
| | * | Decision on Damages; Diphtheria-Tetanus- |
| Petitioners, | * | Acellular Pertussis ("DTaP"); Measles |
| v. | * | Mumps Rubella ("MMR"), Polio and |
| | * | Varicella Vaccinations; Juvenile |
| SECRETARY OF HEALTH | * | Dermatomyositis; Proffer |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

*Mark T. Sadaka, Esq.*, Mark T. Sadaka, LLC, Englewood, NJ, for petitioner.
*Linda S. Renzi, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

**Roth**, Special Master:

On April 9, 2013, William and Brenda Rodriguez ("petitioners") filed a petition on behalf of their minor child, C.R., pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq.*[2] ("Vaccine Act" or "the Program"). Petitioners allege that C.R. developed juvenile dermatomyositis ("JDM") as a result of the Diphtheria-Tetanus-acellular Pertussis ("DTaP"), Measles-Mumps-Rubella ("MMR"), Polio, and Varicella vaccinations he received on August 30, 2011. *See* Petition, ECF No. 1. An entitlement hearing was held on May

---

[1] Although this Decision has been formally designated "unpublished," it will nevertheless be posted on the Court of Federal Claims's website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

23-24, 2016 in Atlanta, GA; on October 26, 2017, I issued a ruling on entitlement, finding that petitioners[3] were entitled to compensation. See Ruling on Entitlement, ECF No. 116.

Respondent filed a proffer on February 14, 2020, agreeing to issue the following payments. Proffer, ECF No. 141.

1. **A lump sum payment of $99,204.68,** representing compensation for pain and suffering ($85,000.00), and life care expenses for Year One ($14,204.68), **in the form of a check payable to petitioner as guardian/conservator of C.R., for the benefit of C.R.;**[4]

2. **A lump sum of $51,188.03,** representing compensation for satisfaction of the State of Georgia WellCare Medicaid lien, payable jointly to petitioner and

> Equian, LLC
> P.O. Box 32140
> Louisville, KY 40232-2140
> Equian File No.: 449353-116714
> Attn: Lauren Hirsch

Petitioner agrees to endorse this payment to Equian, LLC; and

3. **An amount sufficient** to purchase the annuity contract as described in section II. C. of the attached proffer.

These amounts represent compensation for all damages that would be available under § 300aa-15(a).

I adopt respondent's proffer attached hereto, and award compensation in the amount and on the terms set forth therein. The clerk of the court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/ Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[3] On January 21, 2020, the caption was amended in this matter to only include William Rodriguez as petitioner of record in this matter. See Order, ECF No. 140.

[4] No payments shall be made until petitioner provides respondent with documentation establishing that he has been appointed as the guardian/conservator of C.R.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of C.R., any such payment shall be made to the party or parties appointed by the court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.R. upon submission of written documentation of such appointment to the Secretary.

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS

_____

|  |  |  |
|---|---|---|
| WILLIAM RODRIGUEZ, as the Parent and Natural Guardian of C.R., a Minor, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 13-253V |
| SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) | Special Master Roth ECF |
| Respondent. | ) ) ) | |

_____

### RESPONDENT'S PROFFER ON AWARD OF COMPENSATION

**I.**     **Items of Compensation**

    A.     Life Care Items

The parties engaged Linda Curtis RN, MS, CCM, CNLCP, as a joint life care planner to provide an estimation of C.R.'s future vaccine-injury related needs.  For the purposes of this proffer, the term "vaccine related" is as described in the Special Master's Ruling on Entitlement, filed October 26, 2017.  All items of compensation identified in the life care plan are supported by the evidence, and are illustrated by the chart entitled Appendix A: Items of Compensation for C.R., attached hereto as Tab A.[1]  Respondent proffers that C.R. should be awarded all items of compensation set forth in the life care plan and illustrated by the chart attached at Tab A.[2]  Petitioner agrees.

_____

[1]  The chart at Tab A illustrates the annual benefits provided by the life care plan.  The annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

[2]  The parties have no objection to the proffered award of damages. Assuming the Special Master issues a damages decision in conformity with this proffer, the parties waive their right to seek

B.      Lost Future Earnings

The parties agree that based upon the evidence of record, C.R. will more likely than not be gainfully employed in the future.  Therefore, respondent proffers that C.R. should not be awarded lost future earnings as provided under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(3)(B).  Petitioner agrees.

C.      Pain and Suffering

Respondent proffers that C.R. should be awarded $85,000.00 in actual and projected pain and suffering.  This amount reflects that any award for projected pain and suffering has been reduced to net present value.  See 42 U.S.C. § 300aa-15(a)(4).  Petitioner agrees.

D.      Past Unreimbursable Expenses

Petitioner represents that he has not incurred past unreimbursable expenses related to C.R.'s vaccine-related injury.

E.      Medicaid Lien

Respondent proffers that C.R. should be awarded funds to satisfy a State of Georgia WellCare lien in the amount of $51,188.03, which represents full satisfaction of any right of subrogation, assignment, claim, lien, or cause of action the State of Georgia WellCare may have against any individual as a result of any Medicaid payments the State of Georgia WellCare has made to or on behalf of C.R. from the date of his eligibility for benefits through the date of judgment in this case as a result of his vaccine-related injury suffered on or about August 30, 2011, under Title XIX of the Social Security Act.

---

review of such damages decision.  However, respondent reserves his right, pursuant to 42 U.S.C. § 300aa-12(e), to seek review of the Special Master's October 26, 2017, entitlement decision.

II.     **Form of the Award**

The parties recommend that the compensation provided to C.R. should be made through a combination of lump sum payments and future annuity payments as described below, and request that the Special Master's decision and the Court's judgment award the following:[3]

A.  A lump sum payment of $99,204.68 representing compensation for pain and suffering ($85,000.00), and life care expenses for Year One ($14,204.68), in the form of a check payable to petitioner as guardian(s)/conservator(s) of C.R., for the benefit of C.R.  No payments shall be made until petitioner provides respondent with documentation establishing that he has been appointed as the guardian(s)/conservator(s) of C.R.'s estate.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.R., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.R. upon submission of written documentation of such appointment to the Secretary.

B.  A lump sum payment of $51,188.03, representing compensation for satisfaction of the State of Georgia WellCare Medicaid lien, payable jointly to petitioner and

> Equian, LLC
> P.O. Box 32140
> Louisville, KY 40232-2140
> Equian File No.: 449353-116714
> Attn: Lauren Hirsch

Petitioner agrees to endorse this payment to Equian, LLC.

---

[3]  Should C.R. die prior to entry of judgment, the parties reserve the right to move the Court for appropriate relief.  In particular, respondent would oppose any award for future medical expenses, lost future earnings, and future pain and suffering.

C.  An amount sufficient to purchase the annuity contract,[4] subject to the conditions described below, that will provide payments for the life care items contained in the life care plan, as illustrated by the chart at Tab A attached hereto, paid to the life insurance company[5] from which the annuity will be purchased.[6]  Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through respondent's purchase of an annuity, which annuity shall make payments directly to petitioner as guardian(s)/conservator(s) of the estate of C.R., only so long as C.R. is alive at the time a particular payment is due.  At the Secretary's sole discretion, the periodic payments may be provided to petitioner in monthly, quarterly, annual or other installments.  The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioner and do not require that the payment be made in one annual installment.

---

[4]  In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

[5]  The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve.  The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

    a.  C.R. Best Company:  A++, A+, A+g, A+p, A+r, or A+s;

    b.  Moody's Investor Service Claims Paying Rating:  Aa3, Aa2, Aa1, or Aaa;

    c.  Standard and Poor's Corporation Insurer Claims-Paying Ability Rating:  AA-, AA, AA+, or AAA;

    d.  Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating:  AA-, AA, AA+, or AAA.

[6]  Petitioner authorizes the disclosure of certain documents filed by the petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

    1.    <u>Growth Rate</u>

Respondent proffers that a five percent (5%) growth rate should be applied to all medical life care items.  Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity payments should grow as follows: five percent (5%) compounded annually from the date of judgment for medical items.  Petitioner agrees.

    2.    <u>Life-Contingent Annuity</u>

Petitioner will continue to receive the annuity payments from the Life Insurance Company only so long as C.R. is alive at the time that a particular payment is due.  Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of C.R.'s death.

    3.    <u>Guardianship</u>

No payments shall be made until petitioner provides respondent with documentation establishing that he has been appointed as the guardian(s)/conservator(s) of C.R.'s estate.  If petitioner is not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.R., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of C.R. upon submission of written documentation of such appointment to the Secretary.

**III.**    **<u>Summary of Recommended Payments Following Judgment</u>**

A.    Lump sum paid to petitioner as court-appointed Guardian(s)/conservator(s) of C.R.'s estate:    **$99,204.68**

B.    Medicaid Lien:    **$51,188.03**

C.    An amount sufficient to purchase the annuity contract described above in section II. C.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

C. SALVATORE D'ALESSIO
Acting Director
Torts Branch, Civil Division

CATHARINE E. REEVES
Deputy Director
Torts Branch, Civil Division

ALEXIS B. BABCOCK
Assistant Director
Torts Branch, Civil Division

*/S/Linda S. Renzi*
LINDA S. RENZI
Senior Trial Counsel
Torts Branch, Civil Division
U. S. Department of Justice
P.O. Box l46, Benjamin Franklin Station
Washington, D.C.  20044-0146
Direct dial: (202) 616-4133

Dated: February 14, 2020

**Appendix A:  Items of Compensation for C.R.**    Page 1 of 1

| ITEMS OF COMPENSATION | G.R. | * | M | Lump Sum Compensation Year 1 | Compensation Years 2-13 | Compensation Years 14-52 | Compensation Years 53-Life |
|---|---|---|---|---|---|---|---|
| | | | | 2020 | 2021-2032 | 2033-2071 | 2072-Life |
| Insurance Premium | 5% | | M | 6,304.68 | 6,304.68 | | |
| Insurance MOP | 5% | | | 7,900.00 | 7,900.00 | 7,900.00 | |
| Medicare Supp | 5% | | M | | | | 2,547.00 |
| Neurologist | 5% | * | | | | | |
| Lab Testing | 5% | * | | | | | |
| CT Scan | 5% | * | | | | | |
| PT | 4% | * | | | | | |
| IVIG | 5% | * | | | | | |
| Pain and Suffering | | | | 85,000.00 | | | |
| Medicaid Lien | | | | 51,188.03 | | | |
| Annual Totals | | | | 150,392.71 | 14,204.68 | 7,900.00 | 2,547.00 |

Note: Compensation Year 1 consists of the 12 month period following the date of judgment.
Compensation Year 2 consists of the 12 month period commencing on the first anniversary of the date of judgment.
As soon as practicable after entry of judgment, respondent shall make the following payment to the court-appointed
guardian(s)/conservators(s) of the estate of C.R. for the benefit of C.R. for pain and suffering ($85,000.00) and
Yr 1 life care expenses ($14,204.68): $99,204.68.
As soon as practicable after entry of judgment, respondent shall make the following payment jointly to
petitioner and Equian, LLC, as representative of Wellcare, a State of Georgia Medicaid plan, as reimbursement of
the state's Medicaid lien: $51,188.03.
Annual amounts payable through an annuity for future Compensation Years follow the anniversary of the date of judgment.
Annual amounts shall increase at the rates indicated in column "G.R." above, compounded annually from the date of judgment.
Items denoted with an asterisk (*) covered by health insurance and/or Medicare.
Items denoted with an "M" payable in 12 monthly installments at the discretion of respondent.